Submitted our next Katuchni v. Health and Human Services, No. 07-5034. Mr. McLeod. Please, the Court. My name is Glenn McLeod, and I represent the Respondent, Secretary of Health and Human Services, on this appeal. This case involves an award of damages to the estate of E. Barbara Snyder, a Vaccine Act petitioner whose death in 2005 was found to be causally related to an MMR vaccination that Ms. Snyder received in 1992. Ms. Snyder's death in 2005 occurred while her vaccine injury petition was pending. Counsel, am I understanding the government to say she would have been entitled to $556,000 because that's her actual meds, lost wages, and pain and suffering damages, but she went and died while this was pending, so she only gets $250,000. Is that what you're coming out at? Your Honor, the government... So, her injury, the government decided entitled her to $556,000, but because she subsequently died, presumably an even worse injury caused by the vaccine because it was, causation is not being disputed, you're going to therefore reduce the compensation you would give her otherwise. Well, with all due respect, Your Honor, in our view... Is that the outcome that you're asking us to reach? That is the outcome which we believe that the statute mandates. Yes, Your Honor. We believe strongly that Section 15 of the Vaccine Act clearly states that in the event of a vaccine-related death, which is this case, that the estate is entitled to an award of $250,000. Now, where does it say that so clearly, like you said, that the estate doesn't get more than $250,000 just because she died? It's the interpretation, Your Honor, of Section 15A2, which is the only section of those four subparts of Section 15 which specifically relates to the estate. So, tell me this. When Congress drafted the statute relating to injury or death, you want me to interpret that statute as Section 2 pertains only to death and 1 and 3 and 4 are injuries. So, let's sandwich death in the middle and then say all these other provisions relate only to injury. Does under the actual unreimbursed medical expenses, does it say that those are to be awarded only if she's injured and not if she later dies? Under that section, Your Honor, you're referring specifically to Section 15A1. It says in the event of a vaccine-related injury. Was she injured? She was, Your Honor. Did she have a vaccine-related injury? Yes, she did, Your Honor. Why can't she get her compensation? Because she died? She died during the pendency of the case and the Vaccine Act clearly states that in the event- Clearly, where? Where does it clearly state it? I keep missing that. Well, if we turn to the special master's analysis of the legal points- No, I want you to show me where it clearly states it in the statute, like you just said it did. It clearly states in the four sections under Section 15, there's only one section, one point, in which Congress specifically refers to an estate. And it's the only estate, and that is an estate of someone who happens to die as a result of a vaccine-related injury. In no other section of 15A1, 3, or 4 is the estate included. Under Judge Wheeler's interpretation below, he acknowledged that under Section 15A1, 3, and 4, an injured petitioner, Ms. Snyder, could receive compensation under those three sections. And that's what she filed a petition for? She did, Your Honor. She was alive at the time she filed the petition, correct? That's correct. She filed a petition for injury. The government determined she was entitled to $556,000. Then she dies. And now you want me to say she's not entitled to damages or compensation under 1A, 3A, and 4. We're asking the Court to treat similarly situated claimants the same. Okay, before we get to that, I'm sorry. Let me tell you what I think the problem is here. It seems to me there's a pretty good argument that this statute doesn't deal with the issue of survivorship at all, of tort claims. Which, of course, is common law. Tort claims didn't survive death. And unlike state statutes, as in New Jersey, which provide that tort claims do survive death, this statute doesn't provide for that. And you point out in your brief that the Jones Act and other federal statutes do provide for survivorship. And what seems to me your argument is that the absence of a provision for survivorship means that the common law rule of no survivorship applies and that the injury claims don't survive death. Now, the problem that I have with that is that there are cases which say that when a federal statute doesn't address issues of survivorship, those issues are to be determined under federal common law. And that the federal common law, at least in some circumstances, does recognize the right of survivorship. The problem I have is that neither party has addressed this line of cases or this issue. You're trying to find something in the statute which just isn't there one way or the other. It doesn't deal with survivorship. It doesn't tell us the answer to the survivorship question. And what's your response to that? My response to that, Your Honor, is focusing on how the special master analyzed this section dealing with sovereign immunity. We agree with you that section 15 is ambiguous at best as to whether or not injury claims survive the death. Okay, hold on, because that's the part I have trouble with and where I was going to take you a minute ago. 15B, I hope you have it in front of you. Yes, Your Honor. Okay, 15B is Congress's intent to address pre-vaccine act compensation and how it ought to be applied because the act came about on October 1st, 1988. Would you agree with that? Yes, Your Honor. And does 15B, by its clear terms, provide for damages under 1A and 2? So isn't that giving her meds and death benefit? No, Your Honor. What's it giving her? And our interpretation is the same. What? That is section 15, 15B, is read the same as section 15. Okay, and in the next line, of this section, and may also include an amount not to exceed a total of $30,000 for pain and suffering, loss, learning, et cetera. So you're telling me that I should interpret section B as saying she gets death benefits, or even though Congress used the word and in two places, it specifically said and may also include? How in the world can I come to the conclusion for statutory interpretation that you want me to? Well, first of all, Your Honor, the subset part that you point to, refer again, it says in section 15B1, for example, lost earnings. It has parentheses as provided in paragraph 3 of subsection A. Our argument is that subsection A talks only about vaccine injury cases. It does not apply to vaccine death cases. And this has been the consistent view of the Court of Federal Claims for the past almost two decades. But the statute says she may include compensation under paragraphs 1A and 2 of subsection A, and may also include an amount not to exceed $30,000 for lost earnings, pain and suffering, and attorney's fees. But that section says in the case of a vaccine-related injury or death. In our view, this is a vaccine-related death in place. This is not a vaccine-related injury. The statute says for a vaccine-related injury or death, she can get this and this and this. How do you read those ands out of there? We read them in totality with the other section of 15, which it refers to, Your Honor. Do you think that that is the ordinary meaning of the word and, the meaning that you're asking me to ascribe to it, which is that in the event of a death, you get only number 2, you don't get 1A, and then the subsequent language says and may also include up to $30,000? Do you think that's the ordinary interpretation that you would ascribe to the word and? Your Honor, yes, in this sense. Section 15 says that an estate can only recover a certain thing. In this case, Judge Wheeler awarded the estate all four things. That is inconsistent with the plain language of Section 15. I thought you just admitted to me five minutes ago that there isn't any plain language here. It's ambiguous about survivorship. Your Honor, our position is we believe Section 15 is plain, but clearly on the history of this case, the special master acknowledged that there's ambiguity, and Judge Wheeler did as well. So we are willing to acknowledge that reasonable minds can differ. It does not have a survivorship provision in it, one way or the other, right? That is correct, Your Honor. There's no specific survivorship provision in any part of the vexed case. Okay, so isn't the consequence of that that we should look to federal common law to see whether there's survivorship, which requires us to look at the policies of the statute? I don't know the answer to that question, Your Honor. My answer to that question would have been more along the lines of the sovereign immunity argument that the special master proffered in the decision below. That is, were a statute where the government's interpretation of Section 15 is reasonable and plausible, which the special master concluded that it was for the reasons he espoused, a secondary interpretation that would grant more compensation is prescribed by the sovereign immunity. Let me ask you, if we read subsection B as providing sufficiently clear guidance to understand that someone who has died can get both the death benefit and, let's say, lost earnings in pain and suffering, albeit capped at $30,000, if that is how we read B, so that someone who's died can get more than the death benefit, the death benefit plus, if we find B sufficiently clear to indicate that, is there any reason to believe that we should read A differently than B? I have to say no, Your Honor, because the argument is that Section 15B refers to A. A is the section that talks about the general rule for compensation. I will point out that the Court of Federal Claims, however, at least in the Sheehan decision, interpreted Section 15B as precluding compensation in a retrospective case, not our case, for anything above the $250,000 death benefit. The interpretation of Judge Wheeler is novel in our program, which is one of the reasons why we're here today. We understand that it is a very harsh result in this particular case, but we stress that if you look at Section 11B1A... In what case is it not a harsh result? Well, that's a good point, Your Honor. Clearly, Congress recognized that there are going to be individuals who cannot receive compensation under this program. There wouldn't be a statute of limitations otherwise. Suppose someone's actual out-of-pocket medical expenses exceeded $250,000 before they died. Are you suggesting to me that the statute precludes them from receiving their medical expenses? They only get the $250,000 death benefit. They don't get the medical expenses. May I add some facts to your question, Your Honor? Sure. If you assume that the vaccine-related death occurred before the filing of the petition, granted, not our case, but that the petitioner dies before the filing of the petition, what compensation is that petitioner eligible for? The case law has been consistent for the past two decades that that petition... Not in our court, right? We haven't had a case. That is absolutely true, Your Honor. The Federal Circuit has not addressed this issue, which goes to show how settled this area of the law has been for the past 19 years. But I don't think that we generally refuse to do what we think is right just because there's a consistent pattern of decision in the lower court. Absolutely, Your Honor. You owe no deference, no deference at all to the courts below. But in response to Judge Moore, that individual would only be entitled to $250,000. I think that's where we disagree. Then in that situation, someone who dies from an unrelated injury, let's say, for example, someone who has suffered from a vaccine injury and dies in a car accident... You're going to the standing provision of 11B now? Yes, Your Honor. And you're going to tell me that there's no standing for the legal representative to bring a claim for the injury if they died unrelated to the vaccine? We're trying to argue that the Congress made difficult decisions about who would receive compensation and how much. The Vaccine Act is replete with exhibits of limits and offsets and things along those lines. Someone in that situation who suffered a vaccine injury just as devastating as Ms. Snyder but who happened to die from circumstances unrelated to the vaccine couldn't even come to the vaccine program to receive compensation. Why is that? Well, in our interpretation and the lower court's interpretations of a section 11B1A, it talks about only the three classes of petitioners who may petition for compensation. But it's not addressed in survivorship. If the claim survives, if federal common law makes the claim survive, then it doesn't make any difference what the cause of death was. The tort claim that preexisted before death is safe. I mean, every single state in the country has a survivorship statute, correct? Yes, Your Honor. So what you're suggesting is that Congress, enacting this statute against that background, deliberately decided not to allow for survivorship even though tort claims generally survive, even though under the Federal Tort Claims Act claims survive, right? Yes, Your Honor. So can you give me any example where Congress, at the time it enacted this statute, was looking at a provision where a tort claim did not survive? No, Your Honor, not specifically. But what I can point out to you is the fact that Congress specifically talks about only vaccine-related deaths. You mentioned earlier that if there was a common law rule that allowed for the survivorship of the death, it wouldn't matter the cause of the death. Someone who suffers in a car accident, a vaccine injury, could file under the vaccine. So what's wrong with that? I mean, what's the basis for thinking Congress didn't want to allow claims to be brought under that situation? In our view, it would make that section of 11B1A, which specifically says the legal representative of the estate of someone who suffered death from a vaccine-related injury, redundant. There would be no need for Congress to put into that section the requirement that the death be vaccine-related. They certainly knew that there were many individuals who suffered devastating injuries. I don't understand what you're saying. Section 11B1A talks about the vaccine-injured person themselves being able to file, the legal representative of that individual, or the legal representative of the estate of someone who died as a result of a vaccine-related injury. Implicit in that is clearly that the legal representative of any other kind of estate is not cognizable under Section 11B1A. They cannot petition for compensation for their injured decedent. Unless there's a right of survivorship, which isn't addressed in the statute, is it? It's not, but the fact that Congress used such specific terms indicates, in our view, their intent that there not be survivorship. Although I concede they did not specifically put in a provision prohibiting it, nor did they put one in allowing for it, even though they knew they could do so. So your view, really, I think it boils down to we're damned if we do and damned if we don't. Because in this case, if we follow 11B, which clearly, by the use of the word and, says vaccine-related injury or death, compensation may include 1A, 2, and up to $30,000 for pain and suffering. The and there is unequivocal. So if we apply that back to 15A, we've now created the ability for, consistently, petitioners to get their injury compensation that they're entitled to and their death compensation that they're entitled to. And if we do that, then under 11B, if someone dies because they had the misfortune of walking out in front of a bus, their estate can only bring a claim for the death benefit. And you think that's really crystal clear based on 11B. And I'm not saying I disagree with you. But if we go, so that's the damned if we do. And the damned if we don't is $556,000 if she's injured, $250,000 if she dies. It is a very difficult thing to argue. I can't disagree with you. But, Your Honor, you know, this quote. I can't imagine Congress intended that. Can you really imagine that Congress intended her to get $556,000 if she was injured? And that's her medal. Counsel, could I suggest that there are perhaps ways that make this a very unusual case? And I don't mean to step on your answer because you probably were going to say something even more direct to this. But the whole statute, the statute of limitations of the administrative provisions that provide for expeditious decision-making and relief suggests that there will be a judgment and award soon after the vaccination that went awry. And we have the very unusual situation here of a stay requested by the petitioner because of probably difficulties in proving causation with respect to certain issues. And, therefore, an accumulation of medical expenses over a course of years, of 13 years, that perhaps make this the unusual case in terms of a death with preexisting medical expenses unreimbursed. Am I right? You're right, Your Honor. The special minister acknowledged that in his own opinion. Let me make sure I understand this. As a factual matter, you're saying that when people die from a vaccine, they don't have out-of-pocket medical expenses associated with that death? No, Your Honor. We say that they actually do, which reinforces the point that we were making about 11B1A, that even those individuals can only receive the $250,000 if their death occurs before the filing of the petition. But not under 15B. Under 15B, as long as they were injured prior to 1988, they can get both. But Section 15B, which refers to Section 15A, talks about awarding compensation to a petitioner under Section 11. But under 15B, as long as they didn't die from an issue unrelated to the vaccine, I think it's only forward-looking expenses from the date of judgment. Yes, that's correct. It's not past expenses. But they can get lost earnings and pain and suffering, so they still get plus. I suppose you could argue that it's limited to $30,000, and that makes a difference. It's not like $250,000. It's a different approach to compensation. It is a different approach. Congress capped that limit of compensation, and I would also point out to the court that attorney's fees and costs came out of that $30,000 first. So in many instances, petitioners received no compensation for lost wages and pain and suffering in retrospective cases because of the attorney's fees provision. I see that I'm out of time. I think we'll give you two minutes for rebuttal. Thank you, Your Honor. Thank you. Thank you. Mr. Conway. Yes, Your Honor. My name is Kevin Conway. I represent the state of Papasnatter. I'm not sure where to begin. Why don't you start with 11B? Because that's the damn if you do, damn if you don't problem. If 11B wasn't written the way it is, then I have less problems. You know, I think that I've read Section 1,500 times. Special Master Hastings has done it. Judge Mill did the law. Mr. McLeod has done it. And every time you read it, it's perfectly clear. I guess it depends upon your viewpoint. And I'm sure it was perfectly clear to Congress. No, I want you to go to 11B. I'm sorry. I'm sure it was perfectly clear to Congress when they wrote 11A and 11B that it was perfectly clear to them what those sections said. It's the daily work that was put to interpret what Congress has said. Counsel, 11B says the legal representative of any person who died as a result of administration of the vaccine. So the way that this comes out is only the legal representative of a person who died because of the vaccine has the ability to bring a cause of action. How is that not addressing survivorship? In many states, it is the legal representative that brings the action for survivorship and for a wrongful death. Congress is looking at an existing set of laws. And, Judge, in answer to your question, I think with respect to survival, I think they thought they had said it. They looked at Section 15, 1 through 4, and they said we said it. We don't have to address survival. We're very, very clear. And here we are many, many years later discussing this, and it's not clear. And so if it's not clear, what do you do? I think you go to congressional intent. We've done a lot of talking about, you know, the benefits due to virus, lack of medical expenses or lost earnings. But you must remember the number one reason for passing the Vaccine Act wasn't to compensate injured people. It was to protect vaccine manufacturers from lawsuits so they would continue to make vaccines. They threatened to stop. So they would develop new vaccines that would make safer vaccines. So what interpretation of Section 15 protects manufacturers? You think an interpretation that says, oh, you only get $250,000. So, like, you know, if you want the rest of it, you know, after you pay the Medicaid liens, the rest of the hospital bills, you have to go to state court. So you have to reject the vaccine program award? There's simply no way that could happen. There were various interests being balanced, as I understand it. And one was a concern about funding this program and the amount of claims that would be made and the ability of the program to survive financially. Funding has not been an issue in this program. There were billions of dollars in the program. The statutory scheme was to you put a separate tax on vaccines to award these people. This is the, you know, funding is not an issue today in 2007. And, again, there's plenty of money to compensate people, just as there are in the state court actions. Counsel, I was correctly redirected to the idea that 1A is reimbursed medical expenses from the date of judgment going forward. How much, and going forward could also include future medical expenses under the statute. How much of the 556 addressed future medical expenses that, unfortunately, this particular claimant is not going to need because she died? Do we need, if we do send this back or if we change our mind, should she get 556 plus 250, or it was a portion of those medical expenses directed to her future needs, which she now no longer has? No, these were all past medical expenses. All past? Just past medical expenses prior to her death. Okay. How do you deal with the problem that a common law, there wasn't any survivorship toward claims, and the statute doesn't specifically provide for- Your Honor, I wish- Wait, wait, wait, wait. Doesn't specifically provide for survivorship. How do you deal with that? Your Honor, the only way to deal with it is the plain reading of the statute. And I understand it doesn't say it the way we'd like it to say it, but it does say it. It says, as Judge Moore said, it says you get 15A1, 2, 3, and 4. It didn't just stick, like it didn't say another section. It didn't say only one of the above. It said this is what you get if you're injured by a vaccine. This is what you get if you die. It's all 15A1 through 4. It's a plain reading. It's an argument. But they're not survivorship. It doesn't say survivorship. I wish it did. It wouldn't be here. Right. So you look at the ambiguities- And other federal statutes do talk about survivorship. I understand, Your Honor. I wish you'd go back and shake it and say, how about this issue? You know, this has been 14 years in the making. In this case, you're going to save us a lot of time by saying what you meant. There's nothing even in the legislative history to discuss this. Does 15B address survivorship? Because 15B says you get the medical expenses, death, and up to $30,000 for pain and suffering, attorney's fees, and lost earnings. Doesn't that imply a survivorship? Implicitly, yes. Because otherwise, if the person died, how could they also get the $30,000 for pain and suffering, which is clearly related to the injury? I agree it's implicit. So that's an implicit acknowledgment of survivorship in 15B? Right on. But again, just to go back to the number one purpose of the Vaccine Act, it's to protect manufacturers from lawsuits. In 1988, and I know this because I sued manufacturers in 1988, there was one vaccine, one theory. And that one vaccine and that one theory caused all these problems. It was the DPT vaccine. There were too many lawsuits. There was too much toxicity in one of the vaccines. There was a medical theory, negligence. And that created a crisis. There's one vaccine, a handful of cases. And it was defense costs. It was expert costs. It was the awards, which tended to be huge. And so Congress goes and says, we're going to stop this. We're going to protect the manufacturers. Here's the new law. You're not allowed to sue them. Until the end. And I feel like what happened with the vaccine program, you can sue them. But you're not allowed to sue them as a matter of right. And how are we going to keep people in the vaccine program? How are we going to stop them from rejecting the award? We're going to make it attractive. We're going to make it generous. We're going to make it at least as good as the outside actor. And there's tons of legislative history that talks about that. As a matter of fact, in your opinion, in Bryce's judgment, you talk about all the reasons for the vaccine program, what it's doing. And like I said, it's a perfect explanation of what it's there for. But it's an alternative that will make people stay, not reject it and go elsewhere. How in the world is somebody like Barbara Snyder, and there are thousands like her. It's not an individual case. There are thousands like her in the program who will potentially die of injuries. And you're going to say, no, if you die, you get $250. And to get your hundreds of thousands of dollars of medical expenses, you have to sue the manufacturer. You only get the right to bring one claim. And there are short statute of limitations here. Therefore, the fact that someone who has brought a claim, ultimately, of course, as we all will, will die, really isn't. I mean, I'm not sure your figure in reference to thousands makes any sense. There are 5,000 claims in the vaccine program today. They're autistic children. They have a right to bring civil action if they are not satisfied in the vaccine program. They have a right to. Their medical expenses are in the millions, sometimes per case. You are talking a huge problem, if you say, in many that will die. We don't have that. And if you're saying that the vaccine program is a less attractive solution than the civil justice system, then the vaccine program is failing. You're going to have a crisis much worse than the one you had in 1988 because there's now another theory. There's now another theory to sue the manufacturers. It's a no-fault program. You have to have negligence, and you have it because of mercury and vaccines. For the first time since the beginning of the program, there's a theory. This is a real problem. This case isn't about Barbara Schneider. She doesn't care. She's dead. This case isn't about the estate. This is a very important decision. What would Congress have done back in 1988 if you said, like, do you pay them for the death and for the medical expenses? Certainly. The only rational result is they would have paid all these benefits, and I think they thought they had. I don't think they thought they had a talk about survival because they thought they put up a regular 1, 2, 3, 4. I don't think they thought about federal common law about survival. I think they just thought they had done it. This was clear and unambiguous to them, but obviously it wasn't. Any other questions? I'm going to give both of you these citations to these survivorship cases. If you look at Carlson v. Green, 446 U.S., 14, Schreiber v. Sharpless, 110 U.S., 76, and particularly Carlson v. Green, which is the one I gave you first. Okay. Mr. McCloud. Thank you, Your Honor. There is no doubt that this is a very difficult and painful case. This case took far too long to resolve. But the point is that Congress had to make some difficult judgments about the limited funds that we had. Now, Mr. Conway made the comment about how well funded the program is. In respondents' view, how much money is in the program should not matter at all as to what a petitioner is entitled to under the law. And, of course, that's the question in this case, whether Congress determined that they wanted to pay mainly for vaccine-injured persons who have to continue to pay for the tragic circumstances of their injuries for the rest of their life. In the appellant's point of view, that's what the money Congress intended would go for, although they recognize that those individuals whose suffering has ended, albeit through death, should also receive a capped limited compensation of $250,000. They should for their death benefit. If that Congress was clear, their death benefit, right? That's what they should receive because they died, because they're no longer here. But does that mean if they suffered injury in advance of that that they shouldn't get pain and suffering for that injury? I think, Your Honor, what Congress wanted was payment for the estate, and the only element of compensation that is paid to the estate is in Section A.2. In this case, all four subparts were paid to the estate. As Mr. Conway pointed out, Ms. Snyder, the injured person, is no longer with us. Her estate received all four elements of that compensation. Section 15 directly states that only the second part is paid for the estate. We view this as plain language talking about the cap of the award to an estate of a deceased petitioner as being capped at $250,000. Your Honor, we ask that this Court respectfully reverse the finding of the Court of Federal Claims below and to affirm the legal conclusions of the special master in this case, finding that Section 15.A.2 is the exclusive remedy in the case of vaccine-related death. Thank you, Counsel. The case is submitted. That concludes our session for today.